FILED - USDC - FLMD - JAX
AUG 29 2024 AM9:51

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v. Case No. 3:24-cr- 190-WWB-SJH
18 U.S.C. § 1349
CARNISHA MAURICA ROGERS 42 U.S.C. § 408(a)(7)(B)
18 U.S.C. § 1343

**INDICTMENT**

The Grand Jury charges:

**COUNT ONE**
**(Conspiracy to Commit Wire Fraud)**

**A. Introduction**

1. At all times material to this Indictment, the below listed businesses operated in the Middle District of Florida, and elsewhere:

a. Signet Jewelers and its companies to include Kay Jewelers and Jared The Galleria of Jewelry (Jared) were businesses that sold a variety of consumer products with a focus on jewelry;

b. Lowes was a home improvement retailer;

c. M.B. of Orange Park and G.C. were businesses that sold vehicles;

d. CareCredit was a business that offered services to assist customers pay their out-of-pocket healthcare expenses;

e. PayPal was a financial services company that operated an online payment system; and

f. Home Design was a business that sold home décor products.

2. Among other services offered to their customers by Signet Jewelers and its companies to include Kay Jewelers and Jared, Lowes, M.B. of Orange Park, G.C., PayPal, and Home Design was the ability to apply for a line of credit to purchase merchandise. CareCredit offered customers the ability to apply for a line of credit to, among other things, pay for healthcare related costs. When applying for a credit account at the aforementioned businesses, applicants provided their personal identification information to include their Social Security number.

## B. The Conspiracy

3. Beginning on an unknown date, but not later than in or about February 2016, and continuing through and including in or about September 2019, in the Middle District of Florida, and elsewhere, the defendant,

CARNISHA MAURICA ROGERS,

did knowingly and willfully combine, conspire, confederate, and agree with others, both known and unknown to the Grand Jury, to devise and attempt to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, in violation of 18 U.S.C. § 1343.

## C. Manner and Means of the Conspiracy

4. The manner and means by which the conspirators carried out the conspiracy and scheme and artifice to defraud included, but were not limited to the following:

a. It was part of the conspiracy in the Middle District of Florida, and elsewhere, that the defendant and her conspirators fraudulently obtained the means of identification of other individuals, that is, the Social Security number of genuine individuals;

b. It was further part of the conspiracy that the defendant and her conspirators would recruit individuals to obtain lines of credit at various businesses, using the fraudulently obtained Social Security numbers;

c. It was further part of the conspiracy that the defendant and her conspirators would provide the Social Security numbers to the individuals recruited;

d. It was further part of the conspiracy that the defendant and her conspirators would provide fraudulent documents to the individuals recruited;

e. It was further part of the conspiracy that the defendant and her conspirators would tell individuals who were recruited in furtherance of the conspiracy what businesses to contact in order to apply for a line of credit, using the Social Security numbers;

f. It was further part of the conspiracy that the defendant and her conspirators would have the individuals who were recruited in furtherance of the conspiracy contact businesses online, over the phone and/or in person to include among other businesses, Signet Jewelers and its companies to include Kay Jewelers and Jared, Lowes, M.B. of Orange Park, G.C., CareCredit, and PayPal, and apply for a line of credit, using the Social Security numbers;

g. It was further part of the conspiracy that the defendant and her conspirators would sometimes contact certain businesses using both the personal identification information of the individuals who were recruited in furtherance of the conspiracy and the fraudulently obtained Social Security number in order to apply for a line of credit;

h. It was further part of the conspiracy that the defendant and her conspirators would after fraudulently obtaining a line of credit at a business sometimes have the individuals who were recruited in furtherance of the conspiracy call the business and among other things, increase the line of credit, change the address associated with the account, and/or add other authorized users;

i. It was further part of the conspiracy that the defendant and her conspirators would have the individuals who were recruited in furtherance of the conspiracy go to the business wherein the individuals successfully obtained a line of credit;

j. It was further part of the conspiracy that the defendant and her conspirators would sometimes accompany the individuals who were recruited in furtherance of the conspiracy to the business wherein the individuals successfully obtained a line of credit;

k. It was further part of the conspiracy that the defendant and her conspirators would direct the individuals who were recruited in furtherance of the conspiracy to purchase merchandise at the business where the recruited individuals successfully obtained a line of credit;

l. It was further part of the conspiracy that the defendant and her conspirators would sometimes purchase merchandise from businesses, using the line of credit fraudulently opened by the individuals who were recruited in furtherance of the conspiracy;

m. It was further part of the conspiracy that the defendant and her conspirators would sometimes resell to include on Facebook the merchandise fraudulently purchased from businesses, using the line of credit opened by the individuals who were recruited in furtherance of the conspiracy;

n. It was further part of the conspiracy that the defendant compensated individuals for participating in the conspiracy;

o. It was further part of the conspiracy that the conspirators would, and did, share in the proceeds of the conspiracy; and

p. It was further a part of the conspiracy that the conspirators would and did perform acts and make statements to hide and conceal and cause to be hidden and concealed the purpose of the conspiracy and the acts committed in furtherance thereof.

In violation of 18 U.S.C. § 1349

**COUNT TWO**
**(Aiding and Abetting the False Representation of a Social Security Number)**

On or about August 29, 2019, in the Middle District of Florida, and elsewhere, the defendant,

CARNISHA MAURICA ROGERS,

for the purpose of obtaining something of value and for other purposes, did knowingly and with the intent to deceive another person and organization, falsely represent and aid and abet in the false representation to Lowes, a conspirator's Social Security number to be XXX-XX-2110, when in fact, as the defendant well knew, Social Security number XXX-XX-2110, was not assigned to the conspirator.

In violation of 42 U.S.C. § 408(a)(7)(B) and 18 U.S.C. § 2.

**COUNT THREE**
**(Aiding and Abetting the False Representation of a Social Security Number)**

On or about August 29, 2019, in the Middle District of Florida, and elsewhere, the defendant,

CARNISHA MAURICA ROGERS,

for the purpose of obtaining something of value and for other purposes, did knowingly and with the intent to deceive another person and organization, falsely represent and aid and abet in the false representation to Lowes, a conspirator's Social Security number to be XXX-XX-6943, when in fact, as the defendant well knew, Social Security number XXX-XX-6943, was not assigned to the conspirator.

In violation of 42 U.S.C. § 408(a)(7)(B) and 18 U.S.C. § 2.

## COUNTS FOUR AND FIVE
## (Wire Fraud & Aiding and Abetting Wire Fraud)

### A. Introduction

1. Paragraphs 1 and 2 of Part A of Count One of this Indictment are realleged and incorporated by reference, as if fully set forth herein.

### B. Scheme

2. Beginning on an unknown date, but not later than in or about February 2016, and continuing through and including in or about September 2019, in the Middle District of Florida, and elsewhere, the defendant,

CARNISHA MAURICA ROGERS,

did knowingly and willfully devise and intend to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises.

### C. Manner and Means of the Scheme

3. The substance of the scheme and artifice is set forth in Part C of Count One of this Indictment, Manner and Means of the Conspiracy, the allegations of which are realleged and incorporated by reference as if fully set forth herein.

### D. Wire Communication

4. On or about the dates set forth below, in the Middle District of Florida, and elsewhere, the defendant,

CARNISHA MAURICA ROGERS,

for the purpose of executing and aiding and abetting in the execution of the aforementioned scheme and artifice and attempting to do so, transmitted and caused to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, certain writings, signals, signs, pictures, and sounds, that is:

| COUNT | DATE | ELECTRONIC COMMUNICATION |
|---|---|---|
| **FOUR** | 9/9/2019 | Credit application for the fraudulent purchase of a Mercedes-Benz GLC300 involving Social Security number XXX-XX-7130 |
| **FIVE** | 9/9/2019 | Credit application for the fraudulent purchase of a Mercedes-Benz GLC300 involving Social Security number XXX-XX-1991 |

In violation of 18 U.S.C. §§ 1343 and 2.

## COUNT SIX
## (False Representation of a Social Security Number)

On or about September 9, 2019, in the Middle District of Florida, and elsewhere, the defendant,

CARNISHA MAURICA ROGERS,

for the purpose of obtaining something of value and for other purposes, did knowingly and with the intent to deceive another person and organization, falsely

represent to M.B. of Orange Park, her Social Security number to be XXX-XX-7130, when in fact, as the defendant well knew, Social Security number XXX-XX-7130, was not assigned to the defendant.

In violation of 42 U.S.C. § 408(a)(7)(B).

**COUNT SEVEN**
**(Aiding and Abetting the False Representation of a Social Security Number)**

On or about September 9, 2019, in the Middle District of Florida, and elsewhere, the defendant,

CARNISHA MAURICA ROGERS,

for the purpose of obtaining something of value and for other purposes, did knowingly and with the intent to deceive another person and organization, falsely represent and aid and abet in the false representation to M.B. of Orange Park, a conspirator's Social Security number to be XXX-XX-1991, when in fact, as the defendant well knew, Social Security number XXX-XX-1991, was not assigned to the conspirator.

In violation of 42 U.S.C. § 408(a)(7)(B) and 18 U.S.C. § 2.

**COUNT EIGHT**
**(Wire Fraud)**

**A. Introduction**

At all times relevant to this Indictment:

1. Fifth Third Bank was a financial institution doing business in the Middle District of Florida, and elsewhere, and its accounts were federally insured by the Federal Deposit Insurance Corporation.

2. Prestamos Community Development Financial Institution ("Prestamos") was a lending service that among other services assisted businesses in accessing the Small Business Administration Paycheck Protection Program. Prestamos worked with Blue Acorn to access the Small Business Administration Paycheck Protection Program.

3. Blue Acorn was a financial services company that among other services worked with companies to include Prestamos to assist businesses in accessing the Small Business Administration Paycheck Protection Program.

4. Prestamos utilized computer servers / data centers outside of the state of Florida, as part of conducting nationwide business operations.

**The Small Business Administration**

5. The United States Small Business Administration ("SBA") was an executive branch agency of the United States government that provided support to entrepreneurs and small businesses.

6. The SBA enabled and provided for loans through banks, credit unions, and other lenders. These loans had government-backed guarantees. In addition to traditional SBA funding programs, the CARES Act established several new temporary programs and provided for the expansion of others to address the COVID-19 outbreak.

**The Paycheck Protection Program**

7. One of the new programs was the SBA Paycheck Protection Program ("PPP"), which was a loan designed to provide a direct incentive for small businesses to keep their workers on the payroll. Under this program, the SBA could forgive all or part of loans, if employees were kept on the payroll for eight weeks and borrowers submitted documentation confirming that the loan proceeds were used for certain qualifying business expenses (i.e., payroll, rent, mortgage interest, or utilities). The PPP forgiveness process required the applicant to electronically submit a PPP Loan Forgiveness Application Form, a SBA Form 3508S.

8. The PPP application process required interested applicants to electronically submit a Borrower Application Form, a SBA Form 2483-C. The application contained information as to the purpose of the loan, average monthly payroll, number of employees, and background of the business and its owner. Applicants were also required to make certain good faith certifications, including that economic uncertainties had necessitated their loan requests for continued business operations, and that they intended to use loan proceeds only for the authorized purposes.

9. Further, when submitting the SBA Form 2483-C, the authorized representative certified her understanding that, should the PPP funds be knowingly used for unauthorized purposes, the United States could hold her legally liable, including for charges of fraud. The applicant was also required to certify the truth and accuracy of any information provided on the SBA Form 2483-C and in all

supporting documents, to include any documents intended to verify the applicant's payroll expenses. The applicant was required to certify an understanding that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under the law and subject to criminal penalties.

**B. The Scheme and Artifice**

10. Beginning on an unknown date, but no later than in or around April 2021, and continuing through at least in or around November 2021, in the Middle District of Florida and elsewhere, the defendant,

CARNISHA MAURICA ROGERS,

knowingly devised and intended to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

**C. Manner and Means of the Scheme and Artifice**

11. The manner and means by which the defendant sought to accomplish the scheme to defraud included, among others, the following:

a. It was part of the scheme and artifice that the defendant would and did fraudulently complete an IRS Form 1040, Schedule C, "Profit or Loss From Business" for purposes of applying for a PPP loan to which she was not entitled;

b. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed the principal business or profession as service;

c. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed under "Part I Income" gross receipts or sales for her business as $109,575;

d. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business $959 in office expenses;

e. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business $2,992 in advertising expenses;

f. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business $6,195 in rent or lease expenses for other property;

g. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business $1,667 in travel expenses;

h. It was further a part of the scheme and artifice that when fraudulently completing the IRS Form 1040, Schedule C, "Profit or Loss From Business" the defendant listed for her business a net profit of $97,762;

i. It was further a part of the scheme and artifice that, in order to induce the SBA and a SBA Participating Lender to fund a PPP loan for her

purported business, the defendant would and did submit, a false and fraudulent loan application that included multiple materially false and fraudulent representations and pretenses, such as:

i. stating a business gross income of $109,575 and that current economic uncertainty made the loan request necessary to support the ongoing operations of the defendant;

ii. certifying that the business was in operation on February 15, 2020;

iii. certifying that the funds would be used to maintain payroll;

iv. certifying the truth of the statements in the application; and

v. including fraudulent supporting documentation, that is, a fraudulently completed IRS Form 1040, Schedule C, "Profit or Loss From Business."

j. It was further a part of the scheme and artifice that the defendant would and did provide financial institution account information into which the fraudulently obtained PPP funds would be transferred via a ACH payment / wire transfer;

k. It was further a part of the scheme and artifice that the defendant would and did cause a SBA Participating Lender through its bank to send PPP loan

proceeds via a ACH payment / wire transfer to the defendant's bank account at Fifth Third Bank;

l. It was further a part of the scheme and artifice that the defendant would and did retain fraud proceeds for the defendant's personal enrichment and entertainment;

m. It was further a part of the scheme and artifice that, in order to induce the SBA and a SBA Participating Lender to forgive the aforementioned PPP loan for her purported business, the defendant would and did submit, a false and fraudulent PPP Loan Forgiveness Application, a SBA Form 3508S that included multiple materially false and fraudulent representations and pretenses, such as:

i. stating that the amount of the loan spent on payroll costs was $18,000;

ii. certifying that she used the PPP loan proceeds for eligible uses; and

iii. certifying the truth of the statements in the loan forgiveness application.

n. It was further a part of scheme and artifice that the defendant would and did perform acts, and make statements to promote and achieve the object of the scheme and artifice and to misrepresent, hide, and conceal, and cause to be misrepresented, hidden, and concealed, the purpose of the scheme and artifice and the acts committed in furtherance thereof.

### D. Execution of the Scheme and Artifice

12. On or about June 3, 2021, in the Middle District of Florida and elsewhere, the defendant,

CARNISHA MAURICA ROGERS,

for the purpose of executing the scheme and artifice described above, transmitted and caused to be transmitted by means of wire, radio, or television communication in interstate and foreign commerce, certain writings, signals, signs, pictures, and sounds, that is, an Automated Clearing House / wire transfer of PPP loan proceeds in the amount of $20,832.00 from Prestamos to the Fifth Third Bank account of the defendant.

In violation of 18 U.S.C. § 1343.

## FORFEITURE

1. The allegations contained in Counts One, Four, Five and Eight are incorporated by reference for the purpose of alleging forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

2. Upon conviction of a conspiracy of the violation of 18 U.S.C. § 1343, in violation of 18 U.S.C. § 1349, or upon the conviction of the violation of 18 U.S.C. § 1343, the defendant shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation.

3. The property to be forfeited includes, but is not limited to, an order of forfeiture for at least $20,832, which represents the proceeds that the defendant personally obtained as a result of the violation in Count Eight.

4. If any of the property described above, as a result of any act or omission of the defendant:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the Court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

the United States shall be entitled to forfeiture of substitute property under the provisions of 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

A TRUE BILL,

Foreperson

ROGER B. HANDBERG
United States Attorney

By: KEVIN C. FREIN
Assistant United States Attorney

By: MICHAEL COOLICAN
Assistant United States Attorney
Deputy Chief, Jacksonville Division

FORM OBD-34
8/26/24 Revised

No.

UNITED STATES DISTRICT COURT
Middle District of Florida
Jacksonville Division

THE UNITED STATES OF AMERICA

vs.

CARNISHA MAURICA ROGERS

INDICTMENT

Violations: 18 U.S.C. § 1349
42 U.S.C. § 408(a)(7)(B)
18 U.S.C. § 1343

A true bill,

_______________
Foreperson

Filed in open court this 28th day

of August, 2024.

_______________
Clerk

Bail $_______________

GPO 863 525